UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN LEVINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAPLEBEAR, INC. (d/b/a INSTACART),<br><br>Defendant. | Civil Action No. 21-cv-11617-AK |

MEMORANDUM AND ORDER

A. KELLEY, D.J.

    Plaintiff Stephen Levine ("Plaintiff"), a delivery driver who worked for Defendant Maplebear, Inc. d/b/a Instacart ("Defendant" or "Instacart") in 2019 and 2020, brought this putative class action in Suffolk County Superior Court, alleging Defendant has willfully misclassified its delivery drivers as independent contractors, rather than employees, in violation of Massachusetts law. [See Dkt. 1-1 ("Complaint") at ¶¶ 2, 10-20]. Plaintiff argues that the misclassification has deprived him of employee benefits, such as a minimum hourly wage, reimbursement for expenses incurred while working for Defendant, and earned sick time. [Id.]. Defendant timely removed this action [Dkt. 1] and then filed a Motion to Compel Individual Arbitration and Stay the Action [Dkt. 15 ("Motion")] and a memorandum in support thereof [Dkt. 16 ("Memo")]. For the reasons that follow, Defendant's Motion is GRANTED.

1

## I. Background[1]

Defendant provides on-demand grocery shopping and same-day grocery delivery services to customers via a mobile phone application and website. [Complaint at ¶ 1]. Customers use the Instacart platform to connect with full-service shoppers[2] and delivery drivers (together, "drivers") engaged by Defendant. [Memo at 3; Complaint at ¶ 8]. These drivers shop for and deliver groceries and other items the customer orders from retailers. [Complaint at ¶ 8]. According to Defendant, deliveries are primarily local. In 2021, drivers traveled an average of 7 miles for intrastate deliveries and 10.5 miles for interstate deliveries. [Memo at 4]. Additionally, 99.8% of all Instacart driver deliveries in the United States have been entirely intrastate in the past three years. [Id.]. Plaintiff worked as a driver for Defendant from approximately July 2019 to July 2020. [Complaint at ¶ 5].

All drivers, including Plaintiff, must review and sign an "Independent Contractor Agreement" (the "Agreement") when applying to be an Instacart driver. [Memo at 4; see Dkt. 15-4]. The Agreement contains an arbitration provision requiring drivers to arbitrate disputes with Defendant on an individual basis, including disputes related to their classification as independent contractors.[3] [Memo at 4-5; Complaint at ¶ 3]. An electronic portal displays the Agreement for the applicant's review. [Memo at 4]. All applicants must scroll to the bottom of the Agreement before signing, and the second paragraph of the Agreement provides the following notice in bold, uppercase letters: "Important: Pay attention to Section 8, which sets

---

[1] Because Defendant moved to compel arbitration in connection with a motion to stay the action, the Court draws the relevant facts from the operative complaint and the documents submitted to the Court in support of the Motion. Cullinane v. Uber Techs., Inc., 893 F. 3d 53, 55 (1st Cir. 2018).
[2] "Full-service shoppers" shop for and deliver grocery items to customers. [Complaint at ¶ 8 n.1].
[3] Plaintiff's Agreement provides, in part, that the "Parties agree that to the fullest extent permitted by law, ANY AND ALL DISPUTES OR CLAIMS BETWEEN YOU AND INSTACART shall be exclusively resolved by final and binding arbitration by a neutral arbitrator," and the parties may bring "claims against the other only in their individual capacities, and may not bring, pursue or act as a plaintiff, class representative, or class member in any purported class or collective proceeding or action other than on an individual basis." [Memo at 4-5].

forth that you and Instacart mutually agree to arbitrate any disputes or claims that might arise between you." [Id. at 6]. Applicants are able to sign the Agreement by applying a pre-populated signature to the signature box or by using a finger to sign in the signature box. [Id.]. Plaintiff signed the Agreement on July 3, 2019. [Id. at 5].

     Drivers have a thirty-day window to opt out of the arbitration provision by notifying Instacart in writing. [Id.]. Plaintiff never opted out of the arbitration provision after signing the Agreement in July 2019. [Id.]. Plaintiff then signed two updated versions of the Agreement, using the same process described above, in January and December 2020. [Id.]. Although Plaintiff opted out of the arbitration provisions when he signed the updated 2020 Agreements, the 2020 Agreements informed drivers that "[i]f [they] agreed to a previous arbitration agreement with Instacart and opt out of this Arbitration Provision, [they] remain bound by that prior arbitration agreement and must arbitrate any and all claims or disputes covered by that prior arbitration agreement, regardless of whether those claims or disputes arise after the date [they] execute this Agreement." [Id.].

     The parties dispute the enforceability of the arbitration provision as it applies to Plaintiff's claims. Plaintiff alleges Defendant improperly classifies its drivers as independent contractors and consequently does not reimburse drivers for expenses incurred while working for Instacart, including vehicle maintenance, gas, insurance, and phone and data expenses. [Complaint at ¶¶ 10, 18]. Plaintiff also claims drivers are paid by the delivery and do not receive an hourly wage or paid sick time. [Id. at ¶¶ 19-20]. Defendant argues that these claims are governed by the Agreement, and Plaintiff must arbitrate his claims on an individual basis. [Memo at 5-7].

## II. Discussion

Plaintiff contends that the arbitration provision is not enforceable, as he is a transportation worker exempt from arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and Massachusetts law prohibits class action waivers as a matter of public policy. [Complaint at ¶ 4]. The FAA's Section 1 "transportation workers exemption" provides that the FAA "shall not apply 'to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" Circuit City Stores, Inc. v Adams, 532 U.S. 105, 112 (2001) (quoting 9 U.S.C. § 1). Defendant argues that collateral estoppel bars Plaintiff from litigating that issue here and, regardless, Plaintiff is not subject to the transportation workers exemption. [Memo at 1-2].

### A. Collateral Estoppel Does Not Apply

Defendant points to Immediato v. Postmates, Inc., No. 20-cv-12308-RGS, 2021 WL 828381 (D. Mass. Mar. 4, 2021), to argue that collateral estoppel prevents Plaintiff, who is also a named plaintiff in Immediato, from litigating whether the transportation workers exemption applies here. [Memo at 1]. In particular, Defendant claims Plaintiff "actually litigated the issue of Section 1's application to workers who deliver food and other items from local retailers," and the Immediato court's resolution of this issue was "essential" and "sufficiently final" to have preclusive effect under Massachusetts law. [Id. at 9]. Plaintiff responds that collateral estoppel does not apply because Instacart and Postmates are separate parties and are not in privity with one another. [Dkt. 20 ("Opposition") at 14]. Plaintiff also contends that the facts at issue here and in Immediato are distinguishable. [Id.].

A nonparty may use collateral estoppel against a party to the original action who "had a full and fair opportunity to litigate the issues in question," so long as (1) the party against whom

preclusion is asserted was a party or in privity with a party to the prior adjudication; (2) there was a "final judgment on the merits in the prior adjudication"; (3) the issue in the prior adjudication was "identical to the issue in the current adjudication"; and (4) the issue decided in the prior adjudication was "essential to the earlier judgment." Supeno v. Equity Office Props. Mgmt., LLC, 874 N.E.2d 660, 663 (Mass. App. Ct. 2007); see Tuper v. N. Adams Ambulance Serv., Inc., 697 N.E.2d 983, 985 (Mass. 1998).[4]  The critical question is whether the issue in Immediato is identical to the issue here.

The facts here and in Immediato are, admittedly, very similar. Postmates, like Instacart, uses an online and mobile platform to connect customers with drivers who deliver goods from a "variety of local merchants, including restaurants and grocery stores." Immediato, 2021 WL 828381, at *1. The plaintiffs in Immediato, like Plaintiff here, signed arbitration agreements and later brought suit alleging they were improperly classified as independent contractors rather than employees. Id. The court in Immediato found that the FAA's transportation workers exemption did not apply. Still, the issue in Immediato is not identical to the issue here. Contrary to Defendant's assertion, the issue is not simply "whether local delivery drivers of groceries and other retail goods qualify as transportation workers under Section 1 [of the FAA]." [Memo at 10]. Rather, the issue in Immediato was whether *Postmates* drivers are subject to the transportation workers exemption such that the defendant there could compel arbitration. Postmates employees may complete more interstate trips, pick up different kinds of goods from a greater variety of merchants, and be bound by slightly different agreements than Instacart drivers. As such, whether Plaintiff here is subject to the FAA's transportation workers

---

[4] It is irrelevant to the application of collateral estoppel that the Immediato decision is currently pending appeal. Strunk v. City of Beverly Police Dep't, 377 F. Supp. 3d 70, 73 (D. Mass. 2019) ("Issue preclusion applies even where an appeal of the prior judgment is pending.") (citing O'Brien v. Hanover Ins. Co., 692 N.E.2d 39, 44 (Mass. 1998)).

exemption as an *Instacart* driver—as opposed to a Postmates driver—presents a slightly different inquiry, and collateral estoppel does not apply.

### B. The Federal Arbitration Act's Transportation Workers Exemption Does Not Apply

The FAA establishes a "liberal federal policy favoring arbitration," requiring courts to "place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms." Cunningham v. Lyft, Inc., 17 F.4th 244, 249 (1st Cir. 2021) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Nevertheless, the FAA carves out an exception for certain categories of workers: Section 1 provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and the Supreme Court has explained that this exemption is limited to "transportation workers," Circuit City, 532 U.S. at 109. Plaintiff contends that Instacart drivers are transportation workers engaged in interstate commerce, and he therefore is exempt from the FAA pursuant to Section 1 and cannot be compelled to arbitrate. [Opposition at 1]. Defendant argues that Instacart drivers are not engaged in interstate commerce and therefore the transportation workers exemption does not apply. [Memo at 11].

The First Circuit has considered the reach of the transportation workers exemption on multiple occasions in recent years, and its reasoning in Cunningham controls here. See 17 F.4th at 249-53; see also Waithaka v. Amazon.com, Inc., 966 F.3d 10, 16-26 (1st Cir. 2020) (applying similar standard). The plaintiffs in Cunningham argued that they were transportation workers engaged in interstate commerce, and therefore exempt from the FAA, because they drove passengers to and from the airport for trips to and from other states and countries, and they sometimes drove passengers across state lines. 17 F.4th at 250. The First Circuit dismissed

these arguments, explaining that the "Lyft driver contracts with the passenger as part of the driver's normal *local* service to take the passenger to the start (or from the finish) of the passenger's interstate journey," and the airlines themselves "do not agree to provide the relevant ground transit" or contract with Lyft or the drivers to "help the airlines perform such an undertaking." Id. at 250-51 (emphasis added). The First Circuit also explained that Lyft "is clearly primarily in the business of facilitating *local, intrastate* trips," and its drivers were not "primarily devoted to the movement of goods and people beyond state boundaries," unlike the "seamen" and "railroad employees" enumerated in Section 1. Id. at 253 (emphasis added); see 9 U.S.C. § 1. Here, as in Cunningham, Instacart does not contract for or control the interstate journey of the goods that drivers deliver locally; rather, the suppliers, distributors, grocery stores, and merchants facilitate the interstate journey of the goods. Instacart drivers merely contract with customers as "part of the driver's normal local service" to take goods "from the finish of the [goods'] interstate journey" to the Instacart customer. See Cunningham, 17 F.4th at 250.

Contrary to Plaintiff's contention, Waithaka does not require a different conclusion. [Opposition at 6-8]. In fact, the First Circuit clearly distinguished its reasoning in Waithaka from that which applied in Cunningham and, by extension, here. In Waithaka, Amazon "agreed *with Amazon customers* to transport goods interstate *from their point of origin to the customer's home*. . . . The local delivery drivers . . . then agreed *with Amazon* to carry the goods for a portion of that *single interstate journey* ('the so-called "last mile"')." Cunningham, 17 F.4th at 251 (third emphasis in original) (citing Waithaka, 966 F.3d at 13-14). Here, by contrast—as in Cunningham—"there is no evidence of any such agreements" between Instacart and any supplier, distributor, or merchant of goods. Cunningham, 17 F.4th at 251; see Immediato, 2021 WL 828381, at *2 (explaining that cases involving food delivery services, such as Postmates, are

7

distinguishable from "Amazon's last-mile delivery workers because Amazon shipments travel through a national network of warehouses in which the in-state warehouse is simply a staging stop in the interstate journey").[5]

Moreover, like Cunningham, the "class of workers" here—Instacart drivers—"as a whole is not engaged in interstate commerce at all." Cunningham, 17 F.4th at 253. The First Circuit found in Cunningham that the 2% of Lyft rides that crossed state lines was insufficient to establish that drivers there were "primarily devoted to the movement of goods and people beyond state boundaries," as required by the transportation workers exemption. Id. Here, Defendant states—and Plaintiff does not contest—that 99.8% of Instacart deliveries since 2018 have not crossed state lines. [Memo at 11]. In other words, since 2018, only .2% of all U.S. deliveries have involved interstate travel—even less than the 2% of Lyft rides that crossed state lines. [See id. at 12]. A mere .0001% of all interstate deliveries started or ended in Massachusetts, and Plaintiff himself never conducted a delivery across state lines. [Id. at 11-12]. As such, Instacart drivers "are among a class of workers engaged primarily in *local intrastate* transportation, some of whom infrequently find themselves crossing state lines, and are thus fundamentally unlike seamen and railroad employees when it comes to their engagement in interstate commerce." Cunningham, 17 F.4th at 253 (emphasis added). To conclude Plaintiff is a transportation worker engaged in interstate commerce would be too broad a reading of Section 1. See Circuit City, 532 U.S. at 115, 118 (explaining that "engaged in [interstate] commerce" has a "limited reach"); Cunningham, 17 F.4th at 251 ("Drawing a line between the interstate transportation provided by the airlines and the local intrastate transportation provided by Lyft

---

[5] Plaintiff's reliance on Archer v. Grubhub, Inc., No. 1984CV03277BLS1, 2021 WL 832132 (Mass. Super. Ct. Jan. 13, 2021), is misplaced. Not only does Archer reflect the minority view, but it also is not precedential; was decided before Cunningham; and largely ignores the Supreme Court's instruction to interpret Section 1 narrowly. See Immediato, 2021 WL 828381, at *2.

drivers makes sense when defining the nature of activity in which plaintiffs are engaged. One would not reasonably say that plaintiffs are engaged in interstate trucking merely because they sometimes give truck drivers rides to and from their garages. Similarly, we do not think that plaintiffs are engaged in interstate travel merely because they bring passengers to and from an airport.").[6]

### C. The FAA Requires Plaintiff to Arbitrate His Claims on an Individual Basis

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to compel arbitration pursuant to the FAA usually must show that (1) a valid agreement to arbitrate exists; (2) the movant is entitled to invoke the arbitration clause; (3) the other party is bound by that clause; and (4) the claims asserted come within the clause's scope. Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017). However, parties may delegate "threshold arbitrability questions to the arbitrator," so long as the parties' agreement does so by "clear and unmistakable" evidence. Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). Here, the arbitration provision contains a broad delegation clause, in which the parties agreed "that the arbitrability of any dispute between them, including whether or to what extent the Agreement, or a provision therein, is invalid, unconscionable, or otherwise unenforceable, and whether a dispute, claim, or controversy is subject to arbitration, is a decision that will be submitted exclusively to the arbitrator, and will not be decided by any federal or state court." [Dkt. 15-4 ("Independent Contractor Agreement")

---

[6] Plaintiff also argues that if his employment is not within the scope of the transportation workers exemption because he is not "engaged in interstate commerce," then the FAA does not apply at all, as Section 2 provides that the FAA applies to contracts "involving commerce." [Opposition at 14]. This argument fails. The Supreme Court has made clear that the Section 1 phrase "engaged in . . . commerce" is to be construed more narrowly than the Section 2 phrase "involving commerce." See Circuit City, 532 U.S. at 113 (2001); see also Immediato, 2021 WL 828381, at *3 n.4 (rejecting same argument).

at 5]. The delegation clause further provides that the parties "agree that the interpretation of the Agreement shall be submitted exclusively to the arbitrator" and "intend this delegation clause to be clear and unmistakable evidence of the Parties' agreement to delegate all questions of arbitrability to the arbitrator." [Id.]. Because the arbitration provision clearly and unmistakably delegates questions regarding the scope of the provision to the arbitrator, the Court need only determine whether a valid agreement to arbitrate exists as a matter of state law. See Immediato, 2021 WL 828381, at *3.

Under Massachusetts law, an online contract, such as that at issue here, is enforceable when there is "reasonable notice of the terms and a reasonable manifestation of assent to those terms." Kauders v. Uber Techs., Inc., 159 N.E.3d 1033, 1049 (Mass. 2021). Both elements are satisfied here. Plaintiff could not complete the driver application process without opening the Agreement, and he was required to scroll through the Agreement before signing. Moreover, the second paragraph of the Agreement explicitly instructed drivers to "pay attention" to the arbitration provision. Plaintiff signed the agreement, thereby assenting to its terms and entering a binding and valid agreement.[7]  See Immediato, 2021 WL 828381, at *4. Because the Agreement provides that parties may bring "claims against the other only in their individual capacities, and may not bring, pursue or act as a plaintiff, class representative, or class member in any purported class or collective proceeding or action other than on an individual basis" [Motion at 5; Independent Contractor Agreement at 6], Plaintiff may arbitrate only his individual claims, see Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018) ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").

---

[7] Plaintiff does not claim the Agreement is invalid, nor does he contend that the updated 2020 Agreements—where he opted out of the arbitration provisions—control here.

### D. The Court Will Stay the Case and Will Not Grant Interlocutory Review

Plaintiff argues that the Court should certify its order granting the Motion for interlocutory review pursuant to 28 U.S.C. § 1292(b) or, in the alternative, dismiss the action and thereby allow for immediate appeal. [Opposition at 16, 17 n.12]. Neither action is necessary. This case does not involve "a controlling question of law as to which there is substantial ground for difference of opinion," such that "immediate appeal from the order may materially advance the ultimate termination of the litigation." 9 U.S.C. §1292(b); see McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984) (explaining that interlocutory certification "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority"). The First Circuit has clearly established a framework for examining issues of the type discussed here. See Cunningham, 17 F.4th at 249-53; Waithaka, 966 F.3d at 20-26. Interlocutory review is therefore unnecessary. Further, the FAA provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court therefore will not dismiss the action.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Compel Individual Arbitration and Stay the Action [Dkt. 15] is GRANTED. The Clerk will stay the case pending arbitration.

IT IS SO ORDERED.

Dated: March 18, 2022                                  /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge